BARFIELD, Judge.
The appellants challenge a final order of the Division of Administrative Hearings determining the validity of the Board of Medicine’s proposed “Surgical Care Rule,” Rule 21M-20.015, Florida Administrative Code. We affirm.
Appellants contend that the proposed rule is an invalid exercise of legislative authority as defined in section 120.52(8), Florida Statutes, because the Board of Medicine does not have the authority to create a “standard of practice” rule, because the rule creates a new standard of care which modifies, expands, and contravenes existing law, because the rule is vague, fails to put physicians on notice as to what is required or prohibited by the rule, and allows the Board of Medicine unbridled discretion in its enforcement, and because the rule is arbitrary and capricious. They also assert that the rule is invalid because the Board of Medicine failed to adequately consider its economic impact.
In addition, the Florida Board of Optometry challenges the hearing officer’s order dismissing it from the proceedings and his order of clarification indicating that it had been dismissed because it lacked standing as a matter of law. The Florida Optomet-ric Association (FOA), the Florida Nursing Association (FNA), Dr. McClane, and Dr. Dagostino argue that they are adversely affected by the proposed rule and therefore had standing to challenge it.
During the proceedings, the Board of Medicine filed a motion to dismiss the Board of Optometry, FOA, and Drs. McClane and Dagostino on the ground that *583 they lacked standing. Attached to the motion was Attorney General Opinion 85-61, which stated that administrative boards within the Department of Professional Regulation (DPR) do not possess the statutory authority to initiate administrative proceedings in order to challenge the rules of other such boards, but noted that the Secretary of DPR does have standing to challenge any rule or proposed rule. The hearing officer dismissed the Board of Optometry, and in a subsequent order clarified that the Board was dismissed for lack of standing as a matter of law. He concluded that:
[T]he Florida Board of Optometry, unlike the Department of Professional Regulation, has no authority to challenge the regulation by other boards of the Department of Professional Regulation of persons subject to the jurisdiction of those other boards. Nor does the Florida Board of Optometry, unlike the Florida Optometric Association, have the authority to represent individual practitioners.
In his final order, the hearing officer found that optometrists licensed in Florida are not regulated by or subject to discipline by the Board of Medicine, and that they are also not subject to its rules. He further found that the weight of the evidence failed to prove that the proposed rule would cause FOA members, including Dr. Dagostino and Dr. McClane, to be adversely affected economically or in any other substantial manner. He found that the proposed rule does not regulate the conduct of FNA members, who are not subject to discipline by the Board of Medicine, and that the weight of the evidence failed to prove that the rule would cause FNA members to be adversely affected economically or in any other substantial manner. He concluded that FOA, FNA, Dr. Dagostino, and Dr. McClane did not have standing to challenge the validity of the rule, which regulates only physicians.[1]
The hearing officer found that the weight of the evidence indicated that the Board of Medicine’s conclusions were reasonable: that there was a potential problem with the provision of surgical care, and that surgeons should be reminded of their responsibility. He foünd that the Board of Medicine had attempted to express the commonly-accepted standard of care in Florida concerning a surgeon’s pre-opera-tive and post-operative care responsibilities in the proposed rule, in order to put physicians on notice of, and to remind them of, that existing standard of care. Noting the rulemaking authority of section 458.309, Florida Statutes, he found that the weight of the evidence did not show the proposed rule to be inconsistent with existing law, including sections 458.331(l)(t) and (w),[2] or that the rule was not necessary to carry out the Board’s responsibilities, or that the rule was not necessary to protect the health, safety, and welfare of the public. He refused to consider additional grounds for declaring the rule invalid under section 455.211, because no challenge under that statute had been instituted by the Secretary of DPR.
The hearing officer found that the petitioners had failed to prove that the terms of the proposed rule were vague, but that the last sentence in subsection (3), “... The operating surgeon remains responsible for all treatment activities,” was vague and was therefore an invalid exercise of delegated authority. He found that *584 the weight of the evidence failed to prove “that the Proposed Rule was promulgated without thought and reason or that the Proposed Rule is not supported by facts or logic.”
He found that the economic impact statement (EIS) was adequate and that the Board of Medicine had reasonably concluded that no formal economic analysis was necessary because the rule did not change the existing standard of care, and because the Board had allowed affected groups to present evidence of economic impact before preparing the EIS. He ruled that the following statement in the EIS was “incorrect and inconsistent with the requirements of the Proposed Rules”:
While ophthalmologists who now delegate postoperative care to non-physicians would be required to provide all the care and, presumably, bill for the entire fee, their individual incomes may not be significantly affected since this change of practice pattern may reduce the volume and such reduced volume would balance out the increases in individual case billings.
He concluded that the petitioners’ suggestion, that the economic impact on optometrists and ophthalmologists was significantly understated in the EIS, was based upon an incorrect interpretation of the rule as prohibiting co-management. He noted that the EIS stated there should be little cost or economic benefit to persons directly affected by the rule, because “most physicians are already practicing in compliance with this interpretation of the statute.” He found this statement to be consistent with the proposed rule, which he found “only codifies existing Standards of Care in Florida.”
After careful review of the extensive record in this case, we find that, although conflicting evidence was presented below, competent, substantial evidence supports each of the hearing officer’s findings of fact, which in turn support his legal conclusions regarding the validity of the proposed rule and the parties’ standing to challenge it.
AFFIRMED.
ERVIN, J., concurs.
ZEHMER, J., dissents with opinion.

. The hearing officer also found that the Department of Corrections (DOC), which had intervened, did not have standing to challenge the proposed rule. DOC voluntarily dismissed its appeal from this ruling.

. He observed:
Although comments made by various members of the Respondent at various times during the three years it took to draft the Proposed Rule, if considered alone, could lead to the conclusion that some members of the Respondent would have preferred to have established a standard of care consistent with their beliefs, the weight of the evidence failed to prove that the Respondent intended to, and actually did, create a standard of care in promulgating the Proposed Rule.
He found that anesthesia activities during surgery do not generally require post-operativé follow-up, and that the proposed rule was not intended to make any pronouncement concerning the existing standard of care for anesthesia-related activities.